**CV 13 - 1649**

# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Cephus Love** § | |
|     **Plaintiff** § | Case No.: _____ |
| **v.** § | |
| **Windham Professionals, Inc.** § | |
|     **Defendant** § | |

### PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff, CEPHUS LOVE brings suit against Defendant WINDHAM PROFESSIONALS, INC. for its violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, (the "FDCPA") and New York General Business Law § 349 et seq (GBL 349)., and in support would show as follows.

### A.   JURISDICTION AND VENUE

1. The Court has federal question jurisdiction over the lawsuit because the action arises under the Fair Debt Collection Practices Act, 15 U.S.C. 1692, et seq., (FDCPA). Jurisdiction of the Court arises under 28 U.S.C. § 1331 in that this dispute involves predominant issues of federal law, the FDCPA. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202. The Court has supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

2. Venue in this District is proper because all or a substantial part of the events or omissions giving rise to the claims occurred in Kings County, New York.

3. Plaintiff is an individual who resides in Kings County, New York.

4. Defendant WINDHAM PROFESSIONALS, INC. is a professional corporation organized

1

and existing under the laws of the State of Massachusetts, with its principal place of business at 380 Main Street, Salem, New Hampshire 03079. It may be served by and through the New York Secretary of State, One Commerce Plaza, 99 Washington Avenue, Albany, NY 12231.

### B. STATEMENT OF FACTS

5. Defendant WINDHAM PROFESSIONALS, INC. ("Windham") is a debt collection company that sought to collect a putative direct student loan debt from Plaintiff Cephus Love on behalf of the Department of Education.

6. In attempting to collect the debt, Windham made a number of false, deceptive and misleading statements to Mr. Love from approximately February 2011 through approximately September 2012.[1]

7. Different employees at Windham called Mr. Love throughout this period making the same or similar misrepresentations, demonstrating that it is a pattern and practice for Windham to make these misrepresentations.

8. Under the Federal Direct Loan Program 20 U.S.C. § 1087 *et seq.* and its pertinent implementing regulation 34 C.F.R. § 685.211(f)(1) the Department of Education (and thus its debt collectors) must allow a borrower to rehabilitate his direct student loan (removing the account from default) under the following circumstances. The consumer must be offered "reasonable and affordable monthly payments." 34 C.F.R. § 685.211(f)(1). The amount of those payments must be "determined on the basis of the borrower's total financial circumstances." *Id.*

---

[1] While some of the misrepresentations are outside the FDCPA one year statute of limitations, they are within the three year statute of limitations of GBL 349. The conduct outside of the one year FDCPA is also relevant under the FDCPA to the degree that the degree the conduct of the Defendant within one year of the filing of this action was intentional.

If the consumer makes nine "reasonable and affordable" monthly payments within a ten month consecutive period then the loan is rehabilitated. *Id*. At that point, the Department of Education contacts the credit reporting agencies to remove the default from the consumer's credit history. *Id*.

9. In the case at bar, Windham never offered Mr. Love "reasonable and affordable payments" that were "determined on the basis of the borrower's total financial circumstances." This is in direct contravention of Windham's obligations under federal law. *Id*.

10. Instead, Windham made a series of false, deceptive, and misleading representations to Mr. Love that prevented him from being able to rehabilitate his defaulted direct student loan. Windham made the following misrepresentations within one year of the filing of this lawsuit. Windham told Mr. Love that they had a "hardship" program for rehabilitation of default direct student loan debts. There is no such program. Windham told Mr. Love that there was a minimum payment of no less than $115 regardless of Mr. Love's financial situation. This is false. There is no minimum payment for rehabilitation of a direct student loan program. Rather, federal student loan law requires Windham offer rehabilitation payments that are "reasonable and affordable" based on an individualized assessment of Mr. Love's "total financial circumstances." On March 13, 2012 Mr. Love mailed Windham a letter and forty five pages of supporting documentation. Mr. Love itemized his income (he had lost his job and was living on unemployment checks and food stamps) and his expenses, showing the monthly expenses all but entirely equaled his income. The March 13, 2012 letter is attached as Exhibit A and is incorporated by reference. The letter also requested an itemization of how the amount alleged due was calculated and requested Windham offer him in writing a proposed rehabilitation plan. Windham ignored both requests.

Even after Windham received the March 13, 2012 letter and supporting documents, Windham continued to call Mr. Love and demanded a minimum monthly payment of no less than $115, entirely disregarding the information and documentation Mr. Love provided. Without limitation, Windham made these misrepresentations to Mr. Love in telephone calls on March 28, 2012, March 29, 2012, and May 8, 2012. Windham made similar calls to Mr. Love through approximately September, 2012. Windham also represented that Mr. Love had to make either nine or twelve consecutive payments, when in fact federal student loan law allows a consumer to make nine out of ten payments timely in order to be eligible for rehabilitation.

11. Windham's actions inflicted damages upon Plaintiff. Mr. Love is a particularly vulnerable consumer struggling to overcome adversity. Mr. Love was homeless for a number of years. He was eventually able to obtain housing, but the economic downturn has made steady employment especially difficult. Mr. Love lost his job when he sought to put his student loan into rehabilitation. Mr. Love has barely been able to tread water financially, living on a meager unemployment check and food stamps. Windham did not care. Contrary to its obligations under federal law, Windham repeatedly called Mr. Love demanding payments of amounts far in excess of what Mr. Love could be expected to pay. Windham refused to consider Mr. Love's individual circumstances despite Mr. Love providing Windham proof of his dire financial circumstances. The stress of these repeated demands exacerbated existing medical conditions Mr. Love was already struggling to overcome. Windham exacerbated Mr. Love's existing depression and irritable bowel syndrome. When Windham called demanding minimum payments far in excess of the amount allowed by federal law and far more than Mr. Love could ever afford, Mr. Love would have bouts of diarrhea have to use the bathroom more than 10 times in a day, and would

have extreme abdominal cramps. Mr. Love would suffer extreme anxiety and his blood pressure would go up dramatically from these constant demands. Mr. Love would be constantly fixated on how he could possibly pay the amounts demanded by Windham. This caused extreme and recurring headaches. After he gets off the phone with Windham he often feels nauseous, his heart racing, distressed about why they would continue to demand so much money when he has told them his financial situation.

12. Windham's refusal to allow Mr. Love to go into rehabilitation has also prevented Mr. Love from filing his tax returns. If he were to file his tax returns he would be entitled to a payment under the Earned Income Tax Credit. However, if his account was not rehabilitated, Windham would be able to intercept the full amount of his tax refund. Windham's refusal to allow Mr. Love to go into rehabilitation also robbed Mr. Love of the benefit under 34 C.F.R. § 685.211(f)(1) that the Department of Education would contact the credit reporting agencies to remove the default from the his credit report.

### COUNT # 1: Violations of the federal Fair Debt Collection Practices Act.

13. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

14. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). See also Hamilton v. United Healthcare of La., Inc., 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has

5

legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope").

15. Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general." See S. Rep. No. 382, 95th Con., 1st Sess. 5 (Aug. 2, 1977), ("The committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and Jacobson v. Healthcare Fin. Servs., 516 F.3d 85, 91 (2d Cir. 2008) ("In this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.")

16. The obligation alleged by Defendant to be owed by Plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because the putative debt was a direct student loan incurred primarily for family, personal or household purposes.

17. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because he was alleged to owe a "debt," specifically a direct student loan.

18. Defendant is a "debt collector" as defined in 15 U.S.C. § 1692a(6) because he was alleged to owe a debt, specifically the direct student loan.

19. Defendant is a debt collector because it makes thousands of debt collection calls and sends thousands of debt collection letters to consumers seeking to collect putative consumer debts, especially putative student loans.

20. Defendant's actions enumerated in the above statement of facts constitute an attempt to collect a debt or were taken in connection with an attempt to collect a debt within the meaning of the FDCPA.

21. Defendant materially violated the following sections of the FDCPA: 15 U.S.C. §§ 1692d, 1692e, and 1692f. By way of example and not limitation Defendant violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: engaging in conduct the natural consequence of which is to is to harass, oppress, or abuse any person; using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of any debt; misrepresenting the compensation which may be lawfully received; using any false representations or deceptive means; using unfair or unconscionable means; and collecting any amount that is not expressly permitted by law or contract.

22. A prevailing Plaintiff in an FDCPA action is entitled to actual damages, additional statutory damages of up to $1,000.00, and mandatory attorney's fees and costs, and these are so sought.

### COUNT # 2: New York General Business Law Section 349 *et seq.*

23. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

24. New York General Business Law Section 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state."

25. As enumerated above, Defendant violated N.Y. Gen. Bus. Law § 349 *et seq.* by using

deceptive acts and practices in the conduct of their businesses. Specifically, Windham represented that there was a hardship program when there was not; that there was an absolute minimum payment of no less than $115, regardless of the individual circumstances of Mr. Love; refusing to consider Mr. Love's individual financial circumstance, and ignoring evidence of the same; and representing that Mr. Love was required to make either nine or twelve consecutive timely payments when he was only required to make nine out of ten consecutive timely payments.

26. Defendant's conduct has a broad impact on consumers at large. Defendant's conduct impacts the thousands of consumers in the state of New York who have had educational loans that they might seek to rehabilitate. It is Windham's policy and practice to make the misrepresentations listed above. This is evidenced by the fact that the same misrepresentations were being made by different Windham employees repeatedly for more than a year.

27. Defendant committed the above described acts willfully and/or knowingly. As a specialized debt collector for Department of Education student loans, Windham knows (or should know) the most basic of requirements to rehabilitate a direct student loan such as those outlined above.

28. Defendant's wrongful and deceptive acts have caused injury and damages to Plaintiff and unless enjoined will cause further irreparable injury.

29. An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action." N.Y. Gen. Bus. Law § 349(h).

30. As a direct and proximate result of those violations of N.Y. Gen. Bus. Law § 349 *et seq.*,

Last saved 3/27/2013 3:30:00 PM

Plaintiff has suffered compensable harm and is entitled to preliminary and permanent injunctive relief, as to recover actual and treble damages, costs and attorney's fees.

### C. JURY DEMAND.

31. Plaintiff demands a trial by jury.

### D. PRAYER

32. For these reasons, Plaintiff asks for judgment against Defendant for the following:

   i. The above referenced relief requested;

   ii. A declaration that Defendant has committed the violations of law alleged in this action;

   iii. An order enjoining and directing Defendant to cease violating GBL § 349 *et seq.*;

   iv. Actual damages;

   v. Statutory damages under 15 U.S.C. § 1692k and GBL § 349(h);

   vi. Treble damages under GBL § 349;

   vii. An order awarding disbursements, costs, and attorneys' fees under 15 U.S.C. § 1692k, and GBL § 349.

   viii. Prejudgment and post judgment interest as allowed by law;

   ix. General relief; and

   x. All other relief, in law and in equity, both special and general, to which the Plaintiff may be justly entitled.

Last saved 3/27/2013 3:30:00 PM

Dated: Brooklyn, NY  
March 27, 2013

Respectfully submitted,

By:_____  
Ahmad Keshavarz  
THE LAW OFFICE OF AHMAD KESHAVARZ  
16 Court St., 26th Floor  
Brooklyn, NY 11241-1026  
Phone: (718) 522-7900  
Fax:    (877) 496-7809  
Email: ahmad@NewYorkConsumerAttorney.com

# EXHIBIT A

**March 13, 2012 letter from Cephus Love to Windham (without 45 pages of supporting documents)**

Cephus Love
[redacted]
Brooklyn, NY 11207
[redacted]

Social Security #: [redacted]
You acct #: [redacted]

Windham Professionals
6341 Inducon Dr. East
Sanborn, NY 14132-9097

Dear Windham Professionals:

    I am writing to put my direct consolidation loans you are servicing into rehabilitation. I have also lost my job of February 5, 2012. My application for unemployment benefits is still pending. They have told me my estimated weekly benefits will be about $181 per week. I have attached my NY unemployment application that shows this.

    I have attached my prior pay stubs, but, as I say, I have lost my job. I have attached payments I have made for my rent, which is currently $243 per month; I am hoping they will revise that given that I lost my job, but that is what I am paying now. I have also attached receipts for the postage expenses I have incurred in sending in my rent. Normally my groceries are $300 per month, although I am getting $158 per month in food stamps. I have attached the February 4, 2011 determination that I am eligible for food stamps in this amount. I have expenses for toiletries (such as toothpaste, detergent, shampoo, laundry) for about $100 per month. Monthly expenses for clothing are about $50 per month. Transportation is normally $120 per month, although I have a pending transportation allowance.

    I am 3-4 months behind on my rent. I was in a shelter 2 years ago and have been trying to keep stable housing.

    When I called you before you told me that there was a 9 – 12 month rehabilitation program at $135 per month. I spoke with Ashley Roberts Windham (877-719-4440 Ext. 6588) and Aron Trevino (Ext. 7598) at various times and they said they would offer me "a deal." They said that Windham had a "hardship program." I told Windham what my income and expenses were. **But they told me "the best they could do" is have me pay $115 per month. Aaron Trevino said that the "lowest they could go" was $115 per month. Ashley Roberts told me the same thing.** Aaron said the "hardship program" was 9 months.

    I do not see how this is possible given my income and expenses.

    You also said you would garnish my wages (back when I had wages), but my wages were low and inconsistent then.

**Please send me a letter with a proposed rehabilitation program payments that is based on my current income and expenses within 14 days of receipt of this letter.** The payments cannot be $135 or even $115 per month. My unemployment benefits are only going to be $724 ever 4 weeks!

Also, would you please send me an itemization as to the total amount you say I owe, the amount that is principal, the amount that is interest, and the amount that is a collection fee.

Thank you. I look forward to receiving the rehabilitation program based on my current income and expenses, as well as an accounting, within 14 days.

Sincerely,

Cephus Love

Brooklyn, NY 11207

Social Security #: 
You acct #:

Encloses (as stated)