# AHMAD KESHAVARZ
*Attorney at Law*

---

16 COURT ST., 26TH FLOOR
BROOKLYN, NY 11241-1026

WWW.NEWYORKCONSUMERATTORNEY.COM
E-mail: ahmad@NewYorkConsumerAttorney.com

PHONE: (718) 522-7900
FAX: (877) 496-7809

September 23, 2013

Judge Brian M. Cogan
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      **Re:** **Plaintiff's request for pre-motion conference to file for summary judgment as to liability.**
           **Case No. 1:13-cv-01649-BMC,** *Cephus Love v. Windham Professionals, Inc*

Dear Judge Cogan:

    The undersigned represents Plaintiff Cephus Love in this action against Defendant Windham Professionals, Inc. for its violations of the Fair Debt Collection Practices Act and NY Judiciary Law § 487. Plaintiff respectfully submits this letter to request a pre-motion conference to file for summary judgment on liability.

**Policy of the FDCPA: strict liability and protecting the least sophisticated consumer.**

    The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Accordingly, Congress enacted the FDCPA "to protect consumers from deceptive or harassing actions taken by debt collectors[,]" *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir.2002), with the purpose of "limiting the suffering and anguish often inflicted by independent debt collectors." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir.1996) (internal quotation marks omitted). The FDCPA is a strict liability statute.[1] Whether a debt collector complies with the FDCPA is determined from the perspective of the "least sophisticated consumer."[2]

**Issues for which there is no dispute.**

    Remarkably, Windham has admitted nearly all of the material allegations made against them in the First Amended Complaint. Windham is a debt collection company that sought to collect a defaulted direct student loan debt from Mr. Love on behalf of the Department of

---

[1] *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir.2009), *cert. denied,* 130 S. Ct. 3333, 176 L. Ed. 2d 1223 (2010) ("To recover damages under the FDCPA, a consumer does not need to show intentional conduct on the part of the debt collector. The Act 'is a strict liability statute, and the degree of a defendant's culpability may only be considered in computing damages.'")

[2] *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993). "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Id*. at 1318.

Education.

Under the Federal Direct Loan Program 20 U.S.C. § 1087 et seq. and its pertinent implementing regulation 34 C.F.R. § 685.211(f)(1) the Department of Education (and thus its debt collectors) must allow a borrower to rehabilitate his direct student loan (removing the account from default) under the following circumstances. The consumer must be offered "reasonable and affordable monthly payments." 34 C.F.R. § 685.211(f)(1).[3] The amount of those payments must be "determined on the basis of the borrower's total financial circumstances." *Id*. There are no other factors. If the consumer makes nine "reasonable and affordable" monthly payments within a ten month consecutive period then the loan is rehabilitated. *Id.*

In deposition, Windham's corporate representative agreed that the "total financial circumstances" of the consumer should be the only factor they consider in calculating a reasonable and affordable payment. He agreed that the amount of the loan or accrued interest should not be a factor.

Shockingly, the corporate representative testified that (at least through August 2012) the financial circumstance of the consumer played *absolutely no role* in Windham's the minimum monthly payment determination. Instead the sole basis Windham used for determining the minimum monthly payment based as a percentage of the balance and interest, what they term as a "balance sensitive repayment," or BSR.[4] This testimony was corroborated by the testimony of the collectors.

Beginning in September, 2012, Windham instituted a new policy. The minimum monthly payment was now based solely on the financial circumstances of the consumer, not at all on the amount of the loan. This was called "income based repayment," or IBR. The statute had not changed. The regulations had not changed. The only change how the Department of Education would calculate the fee Windham would be paid.

In a series of telephone calls from March 2012 through August 2012, Windham consistently told Mr. Love that the minimum payment could not be below $135 - $115 per month, regardless of his individual financial circumstances. Mr. Love was living on unemployment payments and food stamps. Windham also told him he had to make 9-12 *consecutive* monthly payments in order to get his debt out of default. This evidence is documented in the recordings of the calls produced by Windham, the collection notes (notes typed in by the collectors as they speak with the consumer), and the deposition testimony of the collectors. When Mr. Love spoke with Windham in September, 2012 they suddenly told him they would consider his financial circumstances. They asked him (literally) three questions (income, household size, and state of residence), and then told him that his monthly payments would be $5 per month. (That is what they should have done from the outset.) However, Windham then told Mr. Love that this was a "limited time offer" (untrue) and that he would have

---

[3] 34 C.F.R. § 685.211. (f) Rehabilitation of defaulted loans. (1) A defaulted Direct Loan, except for a loan on which a judgment has been obtained, is rehabilitated if the borrower makes nine voluntary, reasonable, and affordable monthly payments within 20 days of the due date during ten consecutive months. The amount of such a payment is determined on the basis of the borrower's total financial circumstances. If a defaulted loan is rehabilitated, the Secretary instructs any consumer reporting agency to which the default was reported to remove the default from the borrower's credit history.

[4] There was conflicting testimony as to whether collection fees were also rolled into the BSR.

to make payments through a "secured payment method," either a bank account or a credit card. There is no legal requirement for a "secured method." Not surprisingly given his dire financial situation, Mr. Love did not have a credit card. Any bank account he would have to set up would charge him monthly fees that would exceed the amount of the payment sought to be made.

Lastly, Windham has produced recordings of a series of voicemail messages it left for Mr. Love in August and September, 2012. The messages to not include certain statutorily required disclosures, such as that the call is from a debt collector, identifying the debt collector, or stating it was an attempt to collect a debt.

**These undisputed facts demonstrates Windham violated the FDCPA and GBL § 349.**

Based on the above facts, Windham violated the FDCPA. The case most directly on point is *Arroyo v. Solomon & Solomon, P.C.*, 99-CV-8302 (ARR), 2001 WL 1590520 (E.D.N.Y. Nov. 16, 2001). In *Arroyo*, Judge Ross held that a consumer stated a claim for violations of the FDCPA when the debt collector demanded a certain minimum dollar payment amount when federal law required the amount to be "reasonable and affordable" under the consumer's financial circumstances.[5] Also, *Ellis v. Gen. Revenue Corp.*,[6] held that a consumer states a claim that a debt collector violated the FDCPA by stating that a consumer was required to make 9 consecutive monthly payments when in fact student loan regulations required only 9 payments over a period of 10 months. The voicemail messages violate the FDCPA because, "A violation of the FDCPA occurs where the debt collector, in a communication with the consumer, fails to disclose 'that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose.'" McPhatter v. M. Callahan & Associates, LLC, 11-CV-05321 NGG LB, 2013 WL 5209926 (E.D.N.Y. Sept. 13, 2013) (citations omitted).

Misrepresentations that violate the FDCPA generally also violate GBL § 349, such as a debt collector seeking to collect a fee not authorized by law. *Fritz v. Resurgent Capital Servs.*, LP, 11-CV-3300 FB VVP, -- F2d --, 2013 WL 3821479 at * 7 (E.D.N.Y. July 24, 2013) (seeking to collect time barred debt and inflating amount of debt to include court costs not yet awarded violate the FDCPA and GBL 349).

The parties have agreed on a proposed briefing schedule: motion papers due 21 days from the date of pre-motion conference ruling, responses 21 days thereafter, and reply 7 days later.

Sincerely,

/s/
Ahmad Keshavarz

---

[5] Plaintiff asserts that, in its efforts to collect plaintiff's debt, the defendant's agent asked for payments of $100 per month, subsequently insisted that she pay at least $70 per month, and then repeatedly insisted that she pay the original demand of $100 per month. Arroyo Affidavit ¶¶ 6–9. These demands were repeated in direct response to plaintiff's protestations that her financial circumstances were such that she could not afford payment in the amount defendant required. This record provides sufficient evidence of facts to permit a reasonable jury to conclude that, in violation of her rights under 15 U.S.C. § 1692e, plaintiff was misled about her right to pay a reasonable and affordable amount under 20 U.S.C. § 1078–6(a)(1)(A) in connection with defendant's efforts to secure repayment of her student loan.
*Id*. at 13.
[6] *Ellis v. Gen. Revenue Corp.*, 274 F.R.D. 53, 59-60 (D. Conn. 2011) *motion to certify appeal denied*, 3:09-CV-1089 CFD, 2011 WL 2669155 (D. Conn. July 6, 2011) *and leave to appeal denied*, 11-1329-MV, 2011 WL 3490271 (2d Cir. Aug. 9, 2011)